UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-CR-0157-CVE |
| | ) | (08-CV-0677-CVE-FHM) |
| LAWRENCE SAMUELS, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On November 18, 2008, defendant Lawrence Samuels, Jr., a federal prisoner appearing pro

se, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 86).

Section 2255 provides that "a prisoner in custody under sentence of a court established by Act of

Congress claiming the right to be released upon the ground that the sentence was imposed in

violation of the Constitution or law of the United States . . . may move the court which imposed the

sentence to vacate, set aside or correct the sentence."

## I.

On October 5, 2004, the Grand Jury returned an indictment charging defendant with

possession of cocaine base (crack) with intent to distribute under 21 U.S.C. §§ 841(a)(1) and

(b)(1)(B)(iii).  The Court found that defendant was financially unable to obtain counsel and, on

November 2, 2004, appointed Assistant Federal Public Defender Robert Ridenour (trial counsel) to

represent defendant.  Defendant made his initial appearance and entered a plea of not guilty.  On

December 15, 2004, the government filed an enhancement information, charging that defendant had

two prior felony convictions for possession of a controlled substance with intent to distribute and

two prior felony convictions for possession of a controlled substance.  Dkt. # 11.   In the

enhancement information, the government declared its intention to seek a statutory enhancement of defendant's sentence under 21 U.S.C. § 841(b)(1)(B).  Id. at 2.  Without the enhancement information, defendant was facing a mandatory minimum sentence of five years and a maximum sentence of 40 years.  With the enhancement information, defendant faced a mandatory minimum sentence of 10 years and a maximum sentence of life imprisonment.

Based on a plea agreement and with the advice of trial counsel, defendant changed his plea to guilty on April 18, 2005.  Under the terms of the plea agreement, defendant agreed to enter a plea of guilty to the charge in the indictment.  Dkt. # 40-2.  In return, the government agreed to request dismissal of the enhancement information and to recommend a sentence at the low end of the sentencing guideline range.  Id. at 8.  The plea agreement also included an extensive discussion of the role of the United States Sentencing Guidelines (USSG or Sentencing Guidelines) and the Court in the sentencing process.  The plea agreement stated that any estimate of a sentence was "a prediction, not a promise," and the "Court has the final discretion to impose any sentence up to the statutory maximum."  Id. at 10.  It also noted that "all recommendations or requests by the United States pursuant to this agreement are not binding on the Court."  Id.  The plea agreement stated that "the sentence to be imposed upon the defendant will be determined solely by the sentencing judge" and "the United States cannot and does not make any promise or representation as to what sentence the defendant will receive."  Id. at 11.  Defendant initialed each page of the plea agreement,

2

including pages 8, 10 and 11, that discussed the role of the Sentencing Guidelines and the Court's discretion when sentencing defendant.[1]

Defendant also submitted a petition to enter plea of guilty, representing that he was voluntarily changing his plea and affirming his understanding of the possible minimum and maximum sentences. Dkt. # 40-3. In the petition, defendant acknowledged that sentencing "is a matter left exclusively in the province of the Court" and the sentence imposed "is solely a matter within the control of the Judge." Id. at 4-5. Defendant represented that "no officer or agent of any branch of government (Federal, State, or local) has promised, suggested or predicted that I will receive a lighter sentence . . . if I plead 'GUILTY,'" and that "if anyone else, including my attorney, made such a promise, suggestion, or prediction . . . I know that he had no authority to do so." Id. Defendant also represented that his attorney had done everything possible to assist him and he was "satisfied with the advice and help [trial counsel] has given [him]." Id. at 4.

At the change of plea hearing on April 18, 2005, the Court discussed the terms of the plea agreement with defendant and trial counsel. The Court asked the government to summarize the key provisions of the plea agreement. Assistant United States Attorney Douglas Edward Snow explained the defendant's agreement to waive certain rights and the government's agreement to withdraw the enhancement information and recommend the low end of the guideline range. The Court sought clarification of the guideline range applicable to defendant, and questioned whether

---

[1]    The Court notes that the plea agreement contains a waiver of defendant's appellate and post-conviction rights. Dkt. # 40-2, at 3. The government has not invoked the waiver, and the Court may not sua sponte enforce an appellate and post-conviction waiver. United States v. Contreras-Ramos, 457 F.3d 1144, 1145 (10th Cir. 2006) ("the waiver is waived when the government utterly neglects to invoke the waiver"). Therefore, the Court may consider defendant's claim without determining whether it is barred by the appellate and post-conviction waiver contained in the plea agreement.

the government would seek a sentence greater than the five year mandatory minimum required under 21 U.S.C. § 841.  Snow clarified that "the government will recommend the low end of the <u>guideline</u> range."  Dkt. # 56, at 5 (emphasis added).  The Court confirmed that Snow was authorized to make this representation in the plea agreement, and  also asked trial counsel whether he agreed with everything Snow stated.  Trial counsel agreed that Snow's summary of the key terms of the plea agreement was accurate.  <u>Id.</u> at 5-6.

The Court asked defendant if he had a chance to review the plea agreement and if he understood its terms.  Defendant stated that he had reviewed and understood the agreement:

COURT:          Have you had an opportunity to read the plea agreement and discuss it fully with your attorney before you signed it?

DEFENDANT:      Yes, ma'am.

COURT:          Does the plea agreement represent in its entirety any and all understandings that you have with the government?

DEFENDANT:      Yes, ma'am.

COURT:          Can you think of any agreement that you think you have that's not contained in the written plea agreement?

DEFENDANT:      No, ma'am.

COURT:          Okay.  Do you understand the terms of the plea agreement?

DEFENDANT:      Yes, ma'am.

COURT:          And are they as stated on the record by Mr. Snow?

DEFENDANT:      Yes, ma'am.

COURT:          Okay.  Has anyone made any other or different promise of any kind to you in an effort to induce you to plead guilty?

DEFENDANT:      No, ma'am.

> COURT:                Are you pleading guilty of your own free will because you are
>                       guilty?
>
> DEFENDANT:            Yes, ma'am.

Id. at 8-9.  The Court stressed its discretion in determining defendant's sentence, and defendant

stated that he understood the Court might impose a sentence greater than he anticipated:

> COURT:                Do you understand that the terms of the plea agreement are
>                       recommendations to the Court, that I can reject the recommendations
>                       without permitting you to withdraw your plea of guilty and impose
>                       a sentence that is more severe than you may anticipate?
>
> DEFENDANT:            Yes, ma'am.

Id. at 10.  The Court then asked defendant if he understood that the maximum sentence the Court

could impose was no more than forty years and the statute under which he was charged required a

statutory minimum sentence of five years imprisonment:

> COURT:                Do you understand that the maximum sentence which may be
>                       imposed by the Court may include a term of imprisonment of
>                       not less than 5 nor more 40 years under the statute?
>
> DEFENDANT:            Yes, ma'am.

Id. at 11.  Counsel for the government and trial counsel each stated that they understood the low end

of the sentencing guideline range to be one hundred months.  Id. at 12.  However, defendant stated

that he understood that the Court could not determine an appropriate guideline range until after the

completion of the presentence investigation report and that his actual sentence may be different than

trial counsel's estimate:

5

| COURT: | Do you understand that I will not be able to determine the sentence for your case until after the presentence report has been completed, and you and the government have an opportunity to challenge the reported facts and the application of the guidelines recommended by the probation officer, and that the sentence imposed may be different from the estimate Mr. Ridenour may have given you? |
|---|---|
| DEFENDANT: | Yes, ma'am. |

Id. at 15.  The Court also asked defendant if he had read and understood his petition, and he acknowledged that he had reviewed the petition and all of defendant's representations in the petition were "true, correct, and complete."  Id. at 23.  Defendant executed the petition after the Court again asked defendant if he wished to change his plea and understood that he was under no obligation to do so.  Id.  The Court accepted defendant's guilty plea.  The Court also granted the government's motion to dismiss the enhancement information and scheduled defendant's sentencing hearing.  Dkt. ## 39, 40, 42.

Prior to the sentencing hearing, the probation office prepared a presentence investigation report ("PSR").  The PSR classified defendant as a career offender under USSG § 4B1.1 due to his prior controlled substance felony convictions, and recommended that defendant's sentence be calculated using a total offense level of 32 and a criminal history category of VI.[2]  Defendant's sentencing guideline range was 210 to 262 months.  Trial counsel filed both a motion for downward departure and motion for a third acceptance of responsibility point.  Dkt. ## 48, 49.  In the motion for downward departure, trial counsel urged the court to use its discretion and sentence defendant to 100 to 120 months as originally contemplated by the parties, rather than a sentence within the

---

[2]     The PSR reports that defendant had a total of 17 criminal history points and that he was also a career offender under Chapter 5 of the USSG.

6

actual guideline range.  Dkt. # 48.  The Court considered defendant's motions at defendant's sentencing hearing on August 29, 2005.  The Court denied defendant's motion for a third acceptance of responsibility point, because the government was required to prepare for trial and it declined to file a motion for a third acceptance of responsibility point.  Dkt. # 47, at 4-6.  The Court determined that the motion for downward departure was best characterized as a motion for variance and requested additional briefing on the subject.  The Court also requested briefing on whether the Court could grant a motion to withdraw a plea of guilty based on mutual mistake of law should the defendant seek to withdraw his plea.  Id. at 20-21.  On September 15, 2005, the defendant filed a motion for variance (Dkt. # 59) without withdrawing his motion for downward departure.

Defendant appeared for a continued sentencing hearing on September 26, 2005. Before considering the pending motions, the Court asked if defendant was seeking to withdraw his guilty plea:

> COURT:   So I'll take up the motion for downward departure and the motion for variance, Dockets No. 48 and 59.  Mr. Ridenour, would you like to add anything to what you stated in those motions?
>
> RIDENOUR:   Judge, I thin [sic] that the motions say what I would like to say to the Court now.  I simply say that there's precedented avenues for the Court to exercise the discretion that we've prayed for in that filing, and I would ask the Court to consider that.
>
> COURT:   All right.  And you consulted with Mr. Samuels with regard to the statement in those briefs, that the defendant is not seeking to withdraw his plea, correct?
>
> RIDENOUR:   Not at this time.
>
> COURT:   All right.  What does that mean, not at this time?
>
> RIDENOUR:   He has not filed a motion to withdraw his plea at this time.

Dkt. # 75, at 4-5.  Although defendant did not file a motion to withdraw his plea, the Court considered whether defendant had any basis to withdraw his plea.  Based on the briefing provided by counsel, the Court found that there was no legal basis for withdrawal of the plea, because erroneous advice about or miscalculation of the sentencing guideline range alone does not constitute ineffective assistance of counsel.  Id. at 6-8.  The Court denied defendant's motion for downward departure, finding no basis for a departure under the Sentencing Guidelines.  Id. at 8.  Finally, the Court considered defendant's motion for variance in light of the 18 U.S.C. § 3553(a) factors.  The Court found that defendant's significant criminal history and the needs of the public supported the imposition of sentence within the Sentencing Guidelines range.  Id.  at 8-9.  Pursuant to the plea agreement, the government recommended that the Court impose a sentence at the low end of the sentencing guideline range, or 210 months.  The Court sentenced defendant to a term of imprisonment of 210 months and five years of supervised release.  Dkt. # 61.

Defendant appealed his conviction and sentence to the Tenth Circuit Court of Appeals on October 11, 2005.  Dkt. # 64.  Defendant also filed a motion for appointment of new counsel due to a conflict of interest, because he intended to assert ineffective assistance of counsel claims on direct appeal.  Dkt. # 63.  The Court found that defendant's intention to challenge the effectiveness of his trial counsel supported his request for new counsel, and appointed Dennis Caruso (appellate counsel) as defendant's appellate counsel.  Dkt. # 66.  On appeal, defendant alleged that the district court erred in (1) denying his motion to suppress evidence; (2) failing to allow him to withdraw his guilty plea based on ineffective assistance of counsel; and (3) failing to vacate the plea agreement based on the doctrines of mutual mistake of fact and law, public policy, and unconscionability.  The Tenth Circuit affirmed defendant's conviction and sentence on July 9, 2007.  Dkt. # 80.  Defendant

8

filed a petition for writ of certiorari with the United States Supreme Court, but his petition was denied on December 10, 2007.  Dkt. ## 81, 82.

Defendant's conviction became final on December 10, 2007 after his a petition for a writ of certiorari was denied by the Supreme Court.  Fed. R. App. P. 4(b)(1)(A)(i); United States v. Burch, 202 F.3d 1274, 1278-79 (10th Cir. 2000).  Therefore, defendant had until December 10, 2008 to file a timely § 2255 motion.  Since he filed his § 2255 motion on November 18, 2008, his motion is timely.

## II.

Defendant argues that his counsel, both at the trial and appellate level, were constitutionally deficient, and his sentence should be vacated under § 2255.  Defendant alleges that trial counsel induced him to enter a plea of guilty to the charge in the indictment through misrepresentation and false promises, rendering his guilty plea involuntary.  Defendant alleges that trial counsel provided constitutionally deficient assistance by failing to file a motion to withdraw defendant's guilty plea or to object to the plea agreement when it became clear that defendant's prior convictions would be considered in calculating the appropriate guideline range.  Defendant also alleges that appellate counsel was constitutionally deficient.  Defendant claims that appellate counsel failed to demand specific performance of the plea agreement and appellate counsel raised frivolous arguments on appeal.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level

expected from a reasonably competent attorney in criminal cases.  <u>Strickland</u>, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." <u>Id</u>. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Id</u>. at 690.  Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Id</u>. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694; <u>see also</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369-70 (1993).   In <u>Glover v. United States</u>, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance."  Thus, the prejudice prong of the <u>Strickland</u> test does not require that any increase in sentence meet a standard of significance.  <u>See</u> <u>United States v. Horey</u>, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

## A.

Defendant has alleged that trial counsel provided ineffective assistance of counsel by inducing him to plead guilty to the charge in the indictment through misrepresentation, and defendant's guilty plea should be considered involuntary.  The government responds that miscalculation of the guideline range does not constitute ineffective assistance counsel.  The government asserts that defendant was repeatedly advised that any recommendation of his possible

guideline range by his attorney or the government was just a recommendation, and defendant's alleged reliance on trial counsel's advice concerning his sentence does not render defendant's guilty plea involuntary.

The parties agree that defendant was facing a mandatory minimum sentence of ten years if he did not accept the plea agreement, and dismissal of the enhancement information reduced defendant's mandatory minimum sentence to five years. Defendant had two prior controlled substance felony convictions, subjecting him to a statutory enhancement for prior convictions under 21 U.S.C. § 841(b)(1)(B)(iii). Defendant alleges that trial counsel led him to believe that defendant's prior criminal convictions would not be considered in any way when calculating his sentence if he accepted the plea agreement. Dkt. # 87, at 2 ("at the time Movant signed the plea Agreement and agreed to plead guilty, he reasonably understood that his prior convictions would not be used against him"). Counsel for the government agreed to recommend a sentence at the low end of the guideline range, and both parties erroneously believed that the guideline range was 100 to 125 months. However, both the government and trial counsel failed to consider the impact of defendant's criminal history on his guideline range. Defendant's prior felony convictions were used in determining defendant's criminal history category, and he was classified as a career offender under the Sentencing Guidelines. Based on a total offense level of 32 and a criminal history category of VI, his advisory guideline range was 210 to 262 months, and he received a sentence at the bottom of the guideline range. Defendant alleges he would not have pled guilty to possession of cocaine base (crack) with intent to distribute if he had been given accurate advice about his likely sentence, and he would have insisted on going to trial.

Trial counsel's inaccurate advice about defendant's sentencing range does not constitute ineffective assistance of counsel. A plea can be rendered involuntarily entered when defense counsel induces a defendant to accept the plea through material misrepresentation. United States v. Rhodes, 913 F.2d 839, 843 (10th Cir. 1990). However, the Tenth Circuit has held that a miscalculation of the guideline range or erroneous estimation of a defendant's sentence by defense counsel is not constitutionally deficient performance rising to the level of ineffective assistance of counsel. United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993); United States v. Williams, 919 F.2d 1451, 1456 (10th Cir. 1990). Defendant claims that this is not a case where counsel simply miscalculated the guideline range, but rather a case where counsel for the government either failed to comply with the terms of the plea agreement or intentionally misrepresented the applicable guideline range to "trick" defendant into changing his plea. Dkt. # 87, at 13. Defendant's allegations are not supported by the record. Trial counsel voluntarily acknowledged that he had miscalculated the applicable sentencing guideline range by failing to account for defendant's criminal history. The Court advised defendant of the possible mandatory minimum and maximum sentence he faced, and repeatedly advised defendant that the Court retained discretion to determine his sentence and defendant's sentence could exceed any estimate offered by counsel. Although the miscalculation resulted in a significant discrepancy between trial counsel's estimate and defendant's actual advisory guideline range, this does not render defendant's guilty plea involuntary.

A review of the record shows that defendant was aware of the consequences of changing his plea and made no attempt to withdraw his plea even after learning that he would receive a sentence greater that trial counsel's estimate, and that trial counsel's miscalculation of the guideline range does not constitute ineffective assistance of counsel. The Court informed defendant of the maximum

12

sentence of 40 years, and defendant stated that he understood that he could receive a sentence of up to 40 years imprisonment.  The Court also repeatedly informed defendant of its discretion in determining his sentence, referencing it five times during the course of the change of plea colloquy. At various time during the course of the colloquy, the Court noted that "the sentence imposed may be different from any estimate that Mr. Ridenour may have given you," Dkt. # 56, at 15, "the maximum sentence which may be imposed by the Court may include a term of imprisonment of not less than 5 nor more 40 years under the statute," id. at 11, and "this Court may impose any reasonable sentence not greater than the statutory maximum," id. at 15.  Not only did the Court inform defendant of its discretionary authority to determine defendant's sentence, but it also stopped twice in the course of the change of plea to ensure defendant's understanding of the proceedings and his state of mind, and advised defendant that "if you don't wish to do this, you don't have to do this." Id. at 23.  In addition to the Court's oral colloquy, the plea agreement referenced the Court's discretionary powers three times and noted the maximum sentence of 40 years.  The petition also included three references to the  Court's discretion in determining defendant's sentence and noted the statutory minimum and maximum sentences.  Given the lengths to which the Court went to inform defendant of the possibility that his sentence could exceed any estimate offered by counsel, the Court finds that defendant was aware he could be sentenced to a term of imprisonment greater than 100 months, and trial counsel's miscalculation of defendant's guideline range does not constitute ineffective assistance of counsel.

Assuming that defendant could show that trial counsel provided ineffective assistance of counsel, he could not establish prejudice sufficient to satisfy the second prong of Strickland. Defendant asserts that he "reasonably understood" that his prior criminal record would not be

considered in sentencing and that he would receive a sentence of 100 months. Dkt. # 87, at 13. He alleges that "[i]f not for the promise of a 100 month sentence, Movant would have pled not guilty and insisted on going to trial." Id. However, a defendant's "mere allegation" that he would not have pled guilty but for his counsel's errors, although necessary, is ultimately insufficient to entitle him to relief under § 2255. See Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001). A court must consider the factual circumstances surrounding the plea to determine if the defendant would have exercised his right to a jury trial. Id. The Tenth Circuit has consistently held that a defendant cannot establish prejudice when he is aware of the possible maximum sentence and is advised that his sentence may exceed any estimate provided by defense counsel. United States v. Silva, 430 F.3d 1096, 1100 (10th Cir. 2005) (the fact that defendant was aware of the maximum term of imprisonment "belie[s] [defendant's] claim that he was prejudiced by counsel's failure to accurately predict the impact of his criminal history"); Gordon, 4 F.3d at 1571 (when a defendant pleads guilty after being informed that the court maintains discretion to impose a sentence greater than defense counsel's estimate, the defendant's allegation that but for counsel's error he would not have pled guilty is insufficient to establish prejudice); Rhodes, 913 F.2d at 844-45 (defendant admitted the essential elements of the charged offense in the plea agreement and at change of plea hearing, and there was no evidence that "he would have exercised his right to proceed to trial if his counsel had accurately calculated the length of his ultimate sentence"). In this case, defendant is actually asking the Court to vacate his sentence and re-sentence him to 100 months imprisonment and, aside from an unsupported assertion, there is no indication that defendant would exercise his right to a trial if his guilty plea were set aside. If defendant were re-sentenced, the facts underlying the offense and defendant's criminal history would remain unchanged, and he would receive the same sentence.

14

Thus, defendant suffered no prejudice from trial counsel's inaccurate advice about defendant's guideline range.

Defendant has also alleged that trial counsel was constitutionally deficient for failing to file a motion to withdraw defendant's plea of guilty.  However, trial counsel's failure to file a motion to withdraw a plea of guilty does not rise to the level of a constitutional deficiency unless defendant can show that he had a legal basis to withdraw his guilty plea.  See United States v. Elias, 937 F.2d 1514 (10th Cir. 1991).  There is no absolute right to withdraw a guilty plea.  Rhodes, 913 F.2d at 845.  Defendant bears the burden to show a fair and just reason for withdrawal of his guilty plea. United States v. Black, 201 F.3d 1296, 1299 (10th Cir. 2000).  The Tenth Circuit has recognized seven factors that a district court judge should consider when ruling on a motion to withdraw a guilty plea:

> (1) whether the defendant has asserted his innocence; (2) whether the government will be prejudiced if the motion is granted; (3) whether the defendant has delayed in filing the motion; (4) the inconvenience to the court if the motion is granted; (5) the quality of the defendant's assistance of counsel; (6) whether the plea was knowing and voluntary; (7) whether the granting of the motion would cause a waste of judicial resources.

Id. at 1299-1300; see also United States v. Graham, 466 F.3d 1234, 1238 (10th Cir. 2006).  The Tenth Circuit has consistently affirmed the use of these factors.  Even if the government can not show that it will be prejudiced, this does not remove the burden from the defendant to prove a fair and just reason for withdrawing his plea.  Rhodes, 913 F.2d at 845-46.  As a procedural matter, the Tenth Circuit has permitted a district court to consider the facts contained in the PSR when considering a defendant's allegation that he pled guilty without a sufficient factual basis.  United States v. Graves, 106 F.3d 342, 345 (10th Cir. 1997).

15

In this case, the Court specifically asked counsel for both parties to file briefs concerning the withdrawal of a guilty plea based on mutual mistake of law, and the Court considered the issue during defendant's sentencing hearing on September 26, 2005.  Defendant did not file a motion to withdraw his guilty plea prior to the hearing.  Even so, the Court asked trial counsel if he had "consulted with Mr. Samuels with regard to the statement in those briefs, that the defendant is not seeking to withdraw his plea," and trial counsel confirmed that defendant was not seeking to withdraw his guilty plea.  Dkt. # 75, at 4.  The Court addressed the issue of withdrawal of defendant's guilty plea sua sponte, even though defendant had not filed a motion to withdraw his plea, and determined that defendant had no basis to withdraw his plea.  The Court finds that trial counsel's decision to not file a motion to withdraw guilty plea was reasonable.  Trial counsel conferred with his client and decided to seek a sentencing variance, rather than file a motion to withdraw defendant's guilty plea.  Defendant has not shown trial counsel's decision not to file a motion to withdraw defendant's guilty plea was unreasonable or, even if a motion had been filed, that a motion to withdraw defendant's plea would have been successful. The Court finds that the trial counsel's decision not to file a motion to withdraw does not constitute ineffective assistance of counsel.

## B.

Defendant also alleges that his appellate counsel provided ineffective assistance of counsel. Defendant alleges that appellate counsel was deficient for failing to demand specific performance of the plea agreement and for raising frivolous issues on appeal.

In assessing the performance of appellate counsel, the Tenth Circuit has applied the same standard for ineffective assistance as applied to trial counsel.  United States v. Cook, 45 F.3d 388,

392 (10th Cir. 1995).  To the extent that defendant alleges certain arguments should have been raised on appeal, the Court must consider the merits of the omitted issue.  Id..  "If the omitted issue is without merit, counsel's failure to raise it 'does not constitute constitutionally ineffective assistance of counsel.'"  Id.  Appellate counsel is not ineffective for failing to raise a futile argument.  Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999).  However, if the defendant establishes there is a reasonable probability that inclusion of the omitted claim would have resulted in reversal on appeal, the Court may find that appellate counsel was constitutionally ineffective.  Neill v. Gibson, 278 F.3d 1044, 1057 n.5 (10th Cir. 2001).

Defendant alleges that appellate counsel was constitutionally deficient for his failure to demand specific performance of the plea agreement.  In determining the rights of a defendant under a plea agreement in a criminal proceeding, courts frequently look to contract law.  United States v. Gamble, 917 F.2d 1280 (10th Cir. 1990).  The parol evidence rule prohibits the admission of extrinsic evidence to contradict or add to the terms of a completely integrated and binding agreement.  United States v. Rockwell International Corporation, 124 F.3d 1194 (10th Cir. 1997). An integrated agreement exists when "the parties to a contract have reduced to final written expression one or more terms of the agreement."  Id. at 1199.  In this case, the parties entered in a binding and completely integrated agreement.  The plea agreement provided that "no agreements, representations or understandings have been made between the parties in this case, other than those which are explicitly set forth in this Plea Agreement, and none will be entered into unless executed in writing and signed by all of the parties."  Dkt. # 40-2 at 14.  At his change of plea hearing, defendant stated that the plea agreement represented the entirety of his agreement with the government.  Dkt. # 56, at 8.  The parties clearly intended that the plea agreement be relied on as

17

the "final written expression" of the terms of their agreement.  Therefore, had defendant's appellant counsel sought specific performance, the reviewing court would be legally obligated to consider only the terms expressly set out in the written plea agreement.  Defendant alleges that both parties originally contemplated a 100 month term of imprisonment as the low end of the guideline range, and asserts that the Court should enforce his understanding of the plea agreement.  However, the Court finds defendant's claim for specific performance lacks merit, and appellate counsel had no obligation to raise this claim on appeal.  The plea agreement did not require the government to recommend a sentence of 100 months and the parties did not ask the Court to approve a settlement agreement under Rule 11(c)(1)(C) for a specific sentence.  The plea agreement simply required the government to recommend a sentence at the low end of the guideline range, and the government complied with this aspect of the plea agreement.  Defendant received a sentence of 210 months, which was the low end of the guideline range.  Even if defendant believed that he would receive a 100 month sentence, this was not part of the plea agreement and his belief was unreasonable.  Thus, the Court concludes that appellate counsel was not constitutionally deficient for failing to seek specific performance of the plea agreement on appeal.

Defendant next contends that appellate counsel was constitutionally deficient for raising a frivolous argument based on a motion to withdraw that did not exist and for raising the ineffective assistance of counsel issue on direct appeal.  Dkt. # 87 at 7.  The Court has not found any authority suggesting that appellate counsel is constitutionally ineffective for asserting unsuccessful arguments on appeal and, even if appellate counsel were ineffective, it is not clear how asserting unsuccessful arguments causes any prejudice to a defendant.  In this case, the Tenth Circuit declined to consider defendant's claims that he should have been permitted to withdraw his plea and that he received

ineffective assistance of counsel.  Dkt. # 80 at 2.  Since the Tenth Circuit did not even consider the claims, the Court cannot conclude that defendant was prejudiced by their inclusion.

The Court can find no reason to conclude that appellate counsel was constitutionally deficient, either for his failure to seek specific performance of the plea agreement or for asserting other claims on appeal.  Therefore, defendant has failed to establish a claim of ineffective assistance of appellate counsel.

Defendant argues that he is entitled to an evidentiary hearing to present evidence in support of his claims, even if it does not appear that he is entitled to relief on the face of his motion.  An evidentiary hearing is not required if the record before a court conclusively shows that defendant is not entitled to relief.  <u>United States v. Marr</u>, 856 F.2d 1471, 1472 (10th Cir. 1988).  The Court finds that the record in this case conclusively shows that defendant is not entitled to relief.  Therefore, the Court finds that an evidentiary hearing is unnecessary.

**IT IS THEREFORE ORDERED** that defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Dkt. # 86) is **denied**.  A separate judgment is entered herewith.

**DATED** this 6th day of November, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT